**IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
VIRGINIA**
**Norfolk Division**

RAYMOND HICE,

    Plaintiff,

 v.

MAZZELLA LIFTING
TECHNOLOGIES, INC.,

    Serve:

    Registered Agent
    Corporation Service Company
    50 West Broad Street, Suite 1330
    Columbus, Ohio 43215

MAZZELLA JHH COMPANY, INC.,

    Serve:

    Registered Agent
    Corporation Service Company
    100 Shockoe Slip, Floor 2
    Richmond, Virginia 23219

MAZELLA CRANE AND FIELD
SERVICES DIVISION, LLC,

    Serve:

    Registered Agent
    Corporation Service Company
    100 Shockoe Slip, Floor 2
    Richmond, Virginia 23219

    Defendants.

Civil Action No.: 2:21-cv-281

**COMPLAINT** – Age
Discrimination in
Employment Act,
Discrimination; Americans
with Disabilities Act,
Discrimination; Wrongful
Termination in Violaiton of
Public Policy

**Jury Trial Demanded**

1

## COMPLAINT

Comes now the Plaintiff, RAYMOND HICE (hereinafter "Plaintiff" or "Mr. Hice"), and files this Complaint against Defendants, MAZELLA LIFTING TECHNOLOGIES, INC., MAZZELLA JHH COMPANY, INC., and MAZELLA CRANE AND FIELD SERVICES DIVISION, LLC, (hereinafter "Defendants" or "Mazzella"), and moves this Court for entry of judgement in his favor against the Defendants, as set forth herein:

### NATURE OF THE ACTION

1.      Plaintiff brings this action for damages and injunctive relief pursuant to the Defendants' violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq*. ("ADEA"); and the American's with Disabilities Act, 42 U.S.C. §12101 *et seq*.("ADA"); to redress Defendant's deliberate and willfull unlawful employment discrimination against Plaintiff in violation of his state and federal rights.

2.      This action against Mazzella arises from Defendants' unlawful discrimination against and termination of Mr. Hice on account of his age and disability.

### JURISDICTION AND VENUE

3.      Pursuant to 28 U.S.C. § 1331, the Eastern District of Virginia has proper subject matter jurisdiction over this matter as it is a question of federal law.

4.      Specifically, this matter concerns the violation and interpretation of the ADEA, 29 U.S.C. §§ 621, *et seq.* and ADA, 42 U.S.C. §12101 *et seq.*

5.      The Eastern District of Virginia, Norfolk Division is the proper venue for this action pursuant to 28 U.S.C. § 1391(c)(2) and 28 U.S.C. § 1391(b)(1),(2) as it is the District and Division in which Defendant operates a business; and is the location at which the

discriminatory practices were perpetrated, where the Plaintiff was employed by

Defendant, and is convenient to the parties and witnesses.

## PARTIES TO THIS ACTION

6.   Plaintiff, Raymond Hice, is an American citizen in the United States and a resident of

Virginia Beach, Virginia.

7.   At all times relevant to the allegations in this Complaint, Mr. Hice was an employee of

Defendants.

8.   Defendant, Mazzella Lifting Technologies, Inc., is a stock corporation existing under and

by virtue of the laws of the State of Ohio, organized in Ohio, with its principal place of

business in Cleveland, Ohio, which employed Plaintiff through its subsidiaries and

affiliates.

9.   Defendant, Mazzella JHH Company, Inc.,  is a stock corporation existing under and by

virtue of the laws of the Commonwealth of Virginia, organized in Ohio, with its principal

place of business in Cleveland, Ohio, a subsidiary and affiliate of Mazzella Lifting

Technologies, Inc.

10.   Defendant, Mazella Crane and Field Services Division, LLC is a limited liability

company existing under and by virtue of the laws of the Commonwealth of Virginia,

organized in Ohio, with its principal place of business in Cleveland, Ohio a subsidiary

and affiliate of Mazzella Lifting Technologies, Inc.

11.   Defendants employ approximately six hundred and fifty (650) employees and is an

employer as defined by the ADEA; 29 U.S.C. § 630(b).

## PROCEDURAL REQUIREMENTS

12.    On November 25, 2020, Plaintiff filed a charge of age discrimination in violation of the
       ADEA and ADA with the Equal Employment Opportunity Commission ("EEOC"). Such
       charge was filed within one hundred eighty (180) days after the alleged unlawful
       employment practices in violation of 29 U.S.C. §§ 621, *et seq.*, occurred.

13.    The EEOC issued Mr. Hice his Notice of Dismissal and Right to Sue on February 24,
       2021 (See **Exhibit A** – Notice of Dismissal and Right to Sue).

14.    Mr. Hice has complied with the ADEA and ADA administrative requirements of 29
       U.S.C. § 626 and, having met his procedural and administrative deadlines, has elected to
       bring the action privately.

15.    Mr. Hice has exhausted all available administrative remedies prior to bringing this suit.

## FACTUAL ALLEGATIONS

16.    Mr. Hice was hired by Mazzella in 2018 to work at their warehouse in Virginia Beach,
       Virginia.

17.    Mr. Hice was employed to perform the position of Socket pourer by Mr. Larry Lusk
       ("Mr. Lusk"), who was Mr. Hice's supervisor.

18.    Socket pourer is a specialized position requiring extensive training, expertise, experience,
       and knowledge, and is a unique skill among those qualified as a "rigger."

19.    Mr. Hice had all of the required attributes of a Socket pourer.

20.    At the time of his termination, Mr. Hice was the only one of approximately a dozen
       "riggers" who was qualified to pour Sockets and who did so at Mazzella.

21.    Socket pouring is a critical part of Mazzella's business and many of Mazzella's contracts
       could not be performed without a socket pourer.

22.     Prior to July 2020, Mazzella attempted to have a younger rigger, Jason, perform Mr. Hice's job pouring sockets.

23.     Jason, the younger rigger Mazzella placed to pour Sockets in 2019, was unable to do so.

24.     Jason's pours regularly resulted in "cracked" sockets and thus had to be transferred out of that position.

25.     Jason did not have the necessary training and experience to successfully pour sockets. Conversely, Mr. Hice did have the aforementioned training and experience.

26.     Mr. Hice had demonstrated over the course of his employment that he was the only person qualified to pour sockets.

27.     Untrained, inexperienced replacements could not fill Mr. Hice's role at Mazzella, as demonstrated by Jason's inability to do so.

28.     Mr. Hice was an efficient, effective, and motivated employee.

29.     Mr. Hice regularly received scheduled raises in 2018, 2019, and 2020.

30.     Mr. Hice was paid $2.00 per hour more than the other riggers for his specialized services.

31.     Mr. Lusk approved and provided these raises to Mr. Hice due to Mr. Hice's skill and efficiency.

32.     Mr. Lusk specifically asked that Mr. Hice not mention his higher salary to the other riggers.

33.     At the time of his termination, Mr. Hice was the highest paid and  the oldest rigger working for Mazzella in the Norfolk warehouse and rigging division.

34.     Mr. Hice was an excellent, detail oriented, and efficient employee for Mazzella from the time of his hiring until his termination.

35.   Mr. Hice never had any issues with his performance, work ethic, or personal interactions while with Mazzella.

36.   Mr. Hice was sixty-seven (67) years old at the time of his termination.

37.   Mr. Hice was the oldest rigger at Mazzella, approximately ten years oldest than the next oldest similarly situated employee, and approximately twenty-five years older than the majority of riggers.

38.   Mr. Hice has degenerative arthritis that impacts his ability to use his back and legs without excessive and debilitating pain.

39.   Mr. Hice was diagnosed with this disability before he began working for Mazzella.

40.   Mr. Hice has been able to perform all of the necessary functions of his position at a high level, sufficient to earn praise and raises.

41.   Mr. Hice informed Mr. Lusk about his disability from the time he was hired onward.

42.   Mr. Lusk, pursuant to Mr. Hice's requests for accommodation, permitted Mr. Hice to work without dealing with the 3-inch material, as doing so caused him excessive pain.

43.   When Mr. Hice was granted his reasonable accommodation he was told that he would perform the socket pouring as well as numerous other tasks around the warehouse for which his disability did not cause a hinderance.

44.   Mr. Lusk, and Mazzella, granted this reasonable accommodation to Mr. Hice when he began work in 2018.

45.   Mr. Hice never worked part-time, nor was he ever without sufficient work to do on account of his disability.

46.   Mr. Hice performed all of the tasks required of him, to the profit of Mazzella.

47.   Mr. Lusk's allowance of a reasonable accommodation for Mr. Hice demonstrates that Mr. Lusk, and through him, Mazzella, was aware of Mr. Hice's disability.

48.   Mazzella further perceived Mr. Hice to have another disability due to his age, susceptibility to the COVID-19 pandemic.

49.   Mr. Hice was the oldest rigger at Mazzella. Mazzella, with the understanding that older employees were more susceptible to COVID-19, imputed this disability to Mr. Hice.

50.   Mazzella imputed to Mr. Hice an increased risk of developing a severe case of COVID-19.

51.   Mazzella was concerned that this increased risk would make them more culpable to paying out COVID-19 emergency leave and/or Extended Family and Medical Leave Act benefits, protections that were put in place in April and May 2020.

52.   Mr. Hice was a qualified disabled individual capable of performing the essential functions of his position.

53.   None of the other riggers had a disability at the time that Mr. Hice was terminated.

54.   Mr. Hice was meeting or exceeding all of Mazzella's expectations of employment prior to his termination.

55.   On or about April 2020, Mr. Hice was furloughed.

56.   Mr. Hice was only one of two riggers furloughed, despite his work "socket pouring" having no decrease in demand.

57.   All other employees who were furloughed were sewers, which is a separate department within Mazzella's operations.

58.   Mr. Hice was furloughed for approximately one month prior to his termination.

59.   Mr. Hice was the only rigger who was ultimately terminated.

60.   Mr. Hice was terminated because he was older and more expensive than other similarly situated employees, and because he was perceived to be disabled on account of his susceptibility to COVID-19.

61.   On July 31, 2020, Mr. Hice was notified by Mazzella he was being "laid off." (See **Exhibit B** – Termination Letter from Mazzella).

62.    Mr. Hice was terminated by Mazzella on account of his age and disability.

63.   Neither Mr. Hice nor Mazzella experienced a decline in work or profitability in March, April, and May of 2020. Despite the COVID-19 pandemic, Mr. Hice continued to pour sockets at the usual rate and saw no reduction in his ongoing or potential work.

64.   At the time he was terminated Mr. Hice was the only employee with the skills and qualifications to perform the socket pourer job, which was essential to Mazzella's chain business.

65.   Mazzella had sufficient business to keep Mr. Hice onboard, particularly because of the unique role that he performed.

66.   Mr. Hice had no outstanding personal issues, was diligent and efficient as a worker, and conformed to all of Mazzella's requirements.

67.   The only reason for his termination was discrimination on the part of Mazzella to remove their oldest, disabled, and potentially the most expensive employee.

68.   Mr. Hice's job was essential to the continued operation of Mazzella's profits, as many of their products could not be completed without the socket pouring that Mr. Hice provided.

69.   Mazzella replaced Mr. Hice shortly after his termination with a younger, non disabled, employee.

70.     Mazzella needed the socket pourer position filled to continue their business, belying any

        assertion that Mr. Hice was terminated for business purposes.

71.     Mazzella, months prior to Mr. Hice's furlough, was developing a plan to discriminate

        against Mr. Hice on account of his age.

72.     Mazzella required that Mr. Hice train Mr. Kham Phoustasen ("Mr. Phoustasen"), a rigger

        approximately thirty (30) years younger than Mr. Hice, without any disabilities, to pour

        sockets.

73.     During his training and at the time of Mr. Hice's termination, Mr. Phoustasen was a

        rigger working in the same division and worksite as Mr. Hice.

74.     Mazzella had Mr. Hice train Mr. Phoustasen to pour sockets so that they could replace

        Mr. Hice with the younger, less expensive rigger.

75.     While Mr. Hice was furloughed, Mazzella began to use Mr. Phoustasen to fill Mr. Hice's

        position as socket pourer.

76.     Mr. Hice was terminated shortly thereafter.

77.     Mazzella, in the weeks after Mr. Hice's termination, hired a new rigger, Ray.

78.     Ray is approximately forty (40) years old and twenty years younger than Mr. Hice, Ray

        had no disabilities at the time of his hiring.

79.     Ray was hired to fill the position vacated when Mr. Phoustasen was transferred into Mr.

        Hice's former position.

80.     No positions at Mazzella were eliminated when Mr. Hice was terminated, the socket

        pourer position was filled by Mr. Phoustasen, and Mr. Phoustasen's position was filled by

        a new hire.

81.     Mazzella had sufficient work for Mr. Hice to continue as a socket pourer.

82.     Mazzella used the cover of COVID-19 to justify their termination of Mr. Hice.

83.     Mazzella's business did not slow and they continued to hire new employees at the time
they terminated Mr. Hice.

84.     Mr. Hice has been unable to find comparable work since his discriminatory termination
and has suffered humiliation, loss of income, and general suffering as a result.

### COUNT I: AGE DISCRIMINATION IN VIOLAITON OF THE ADEA

85.     Plaintiff reasserts and affirms the statements made in paragraphs 1-84.

86.     The ADEA makes it unlawful for an employer to discriminate against an employee on
account of age. *See* 29 U.S.C. § 623.

87.     Per Title 29 of the United States Code, discrimination includes adverse employment
actions such as termination on account of age.

88.     Under Title 29 of the United States Code, Defendant discriminated against Plaintiff by
terminating him on account of his age.[1]

89.     Plaintiff is a member of a protected class over the age of forty, specifically Plaintiff is
sixty-seven (67).

90.     Plaintiff was at least ten years older than the next oldest similarly rigger operating out of
the division and worksite where Plaintiff was employed.

91.     Plaintiff was on average twenty-five years older than similarly situated riggers and he
was approximately thirty years older than Defendant's recent hires made to replace him.

---

[1] The elements necessary to establish a prima facie case for age discrimination are: "[Plaintiff] (1) was a member of a protected class, i.e., age 40 or older, (2) suffered an adverse employment action, (3) was meeting his employer's expectations at the time of the adverse action, and (4) was replaced by or treated less favorably than someone outside the protected class or someone "substantially younger." Sullivan v. Perdue Farms, Inc., 133 F. Supp. 3d 828, 837 (E.D. Va. 2015).

92.    The age difference between Plaintiff and the younger riggers, including those newly trained and hired, provides sufficient inference of age discrimination, even if some of the other younger riggers were over forty years old.[2]

93.    Plaintiff was performing at or above Defendant's expectations for riggers in his division and worksite.

94.    Plaintiff regularly received scheduled raises and private raises from his supervisor Mr. Lusk, including one in 2020.

95.    Plaintiff saw no reduction in his workload or projected workload prior to his termination.

96.    Plaintiff had no outstanding personal issues with any of the other employees with whom he worked.

97.    Defendant used Plaintiff to train his own replacement Mr. Phoustasen, who was over thirty years younger than the Plaintiff.

98.    Plaintiff suffered an adverse employment action on account of his age.

99.    Plaintiff was terminated on July 31, 2020.

100.   Plaintiff was terminated because of his age.

101.   Younger riggers were treated more favorably than Plaintiff.

102.   None of the younger riggers were terminated.

103.   Mr. Phoustasen replaced Mr. Hice as socket pourer.

104.   Defendant hired Ray, a younger rigger approximately forty years old, to fill Mr. Phoustasen position as rigger, after Mr. Phoustasen transferred into Plaintiff's position.

105.   No positions at Mazzella were eliminated at that time.

---

[2] "Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996).

106.   Defendant made these hires and promotions within a month of Mr. Hice's termination.

107.   Defendant planned to discriminate against Plaintiff when they forced him to train his younger replacement.

108.   Defendant's discrimination against Plaintiff was willfull and deliberate.

109.   Defendant purposefully terminated Plaintiff on account of his age.

110.   Any claim for a legitimate purpose for Plaintiff's termination by Defendant is pretextual.

111.   Defendant did not lose substantial business that would have required Plaintiff's termination for business purposes, as evidenced by the fact that they replaced his position.

112.   Defendant's hiring of younger employees shortly following Plaintiff's termination demonstrates that Defendant did not need to terminate Plaintiff for business purposes.

113.   Plaintiff had no performance or personal issues that would have required his termination.

114.   Plaintiff suffered loss of income and benefits because of Defendant's discrimination.

115.   Defendant knowingly violated the ADEA and discriminated against Plaintiff on account of his age by terminating Plaintiff.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

116.   Plaintiff reasserts and affirms the statements made in paragraphs 1-115.

117.   The ADA makes it unlawful for an employer to discriminate against an employee on account of age. 42 U.S.C. § 12101 *et seq*.

118.   Per Title 42 of the United States Code, discrimination includes adverse employment actions such as termination on account of disability.

119.   Under Title 42 of the United States Code, Defendant discriminated against Mr. McLendon by terminating him on account of his disability.[3]

---

[3] "To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer]

120.    Plaintiff was a qualified disabled individual for all times relevant to this complaint.

121.    Plaintiff was diagnosed with severe arthritis.

122.    Plaintiff's disability caused him debilitating pain and discomfort when performing certain

        actions with his legs and back.

123.    Despite this disability, Plaintiff was more than capable of performing the essential

        functions of his position fromn the beginning of his employment, up to and including

        until he was terminated.

124.    Defendant was aware of that Plaintiff was a qualified disabled individual from 2018

        onward.

125.    Defendant provided to Plaintiff a reasonable accommodation from 2018 onward.

126.    Plaintiff suffered an adverse employment action on account of his disability.

127.    Defendant terminated Plaintiff on July 31, 2020 on account of his disability.

128.    At the time of his termination Plaintiff was able to pour sockets and perform other

        essential functions of his position and never needed to go to part time.

129.    Despite this, Defendant terminated Plaintiff so that he could be replaced by Mr.

        Phoustasen who did not require reasonable accommodations and was not disabled.

130.    Other workers without a disability were not terminated were treated more favorably than

        Plaintiff.

131.    Non-disabled riggers at Mazzella were not terminated, nor furloughed.

132.    Plaintiff was replaced by non-disabled individuals shortly after his termination.

133.    Plaintiff was required to train his eventual replacement, Mr. Phoustasen, in the months

        before his termination.

---

discharged her (or took other adverse employment action) because of her disability.' " Jacobs v. N.C. Admin. Office
of the Courts, 780 F.3d 562, 572 (4th Cir. 2015).

134.   Mr. Phoustasen was transferred into Plaintiff's role as socket pourer after Plaintiff had been terminated.

135.   Within a month of having termination Plaintiff, Defendant hired another non-disabled individual, Ray, to fill the role vacated by Mr. Phoustasen when he was transferred to Plaintiff's position.

136.   Defendant knowingly and purposefully violated the ADA by terminating Plaintiff on account of his disability.

137.   Any claim for a legitimate purpose for Plaintiff's termination by Defendant is pretextual.

138.   Defendant did not lose substantial business that would have required Plaintiff's termination for business purposes.

139.   Defendant's hiring of non-disabled employees shortly following Plaintiff's termination demonstrates that Defendant did not need to terminate Plaintiff for business purposes.

140.   Plaintiff had no performance or personal issues that would have required his termination.

## COUNT III: PERCEIVED DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

141.   Plaintiff reasserts and affirms the statements made in paragraphs 1-140.

142.   The ADA makes it unlawful for an employer to discriminate against an employee on account of age. 42 U.S.C. § 12101 *et seq*.

143.   Per Title 42 of the United States Code, discrimination includes adverse employment actions such as termination on account of disability.

144.   Under Title 42 of the United States Code, Defendant discriminated against Mr. Hice by terminating him on account of his disability.

145.    Additionally and/or alternatively, Plaintiff was discriminated against on account of a perceived disability.

146.    Defendant believed that, on account of his age, Plaintiff had a disability that made him overly susceptible to COVID-19 and therefore potentially unable to perform the essential functions of his position.[4]

147.    Defendant was mistaken in this belief.

148.    Plaintiff was at all times able to perform the essential functions of his position.

149.    Mazzella considered Mr. Hice disabled and overly susceptible to the COVID-19 virus.

150.    Defendant was concerned that Plaintiff would create liability for Defendant by potentially needing to use COVID-19 ermergency leave and/or Extended Family and Medical Leave Act leave.

151.    Mazzella, in order to circumvent COVID-19 protections, terminated Mr. Hice

152.    Defendant terminated Plaintiff on July 31, 2020 on account of his disability.

153.    At the time of his termination Plaintiff was able to pour sockets and perform other essential functions of his position and never needed to go to part time.

154.    Despite this, Defendant terminated Plaintiff so that he could be replaced by Mr. Phoustasen who was not perceived to be disabled.

155.    Other workers without a perceived disability were not terminated were treated more favorably than Plaintiff.

156.    Non-disabled riggers at Mazzella were not terminated, nor furloughed.

---

[4] "First, in order to demonstrate that she was regarded as disabled, Rhoads was required to show that: (1) her employer "mistakenly believe[d] that [she] has a physical impairment that substantially limits one or more major life activities," or (2) her employer "mistakenly believe[d] that an actual, nonlimiting impairment substantially limits one or more major life activities." Rhoads v. F.D.I.C., 257 F.3d 373, 390 (4th Cir. 2001)

157.    Plaintiff was replaced by non-disabled individuals shortly after his termination.

158.    Plaintiff was required to train his eventual replacement, Mr. Phoustasen, in the months

before his termination.

159.    Mr. Phoustasen was transferred into Plaintiff's role as socket pourer after Plaintiff had

been terminated.

160.    Within a month of having termination Plaintiff, Defendant hired another non-disabled

individual, Ray, to fill the role vacated by Mr. Phoustasen when he was transferred to

Plaintiff's position.

161.    Defendant knowingly and purposefully violated the ADA by terminating Plaintiff on

account of his perceived disability.

162.    Any claim for a legitimate purpose for Plaintiff's termination by Defendant is pretextual.

163.    Defendant did not lose substantial business that would have required Plaintiff's

termination for business purposes.

164.    Defendant's hiring of non-disabled employees shortly following Plaintiff's termination

demonstrates that Defendant did not need to terminate Plaintiff for business purposes.

165.    Plaintiff had no performance or personal issues that would have required his termination.

166.    Defendant knowingly violated the ADA and discriminated against Plaintiff on account of

his perceived disability by terminating him.

## COUNT IV: WRONGFUL TERMINATION IN CONTRAVENTION OF PUBLIC POLICY

167.    Plaintiff reasserts and affirms the statements made in paragraphs 1-166.

168.    Defendant terminated Plaintiff in violation of Virignia Public Policy.

169.    The Virginia Values Act, "VVA," enacted on July 1, 2020, makes unlawful

discrimination against employees on account of age.[5]

170.    Virginia employers are prohibited, per the VVA, from terminating employees on account

of age: "It is an **unlawful employment practice** for: An employer to: Fail or refuse to

hire, **discharge**, or otherwise discriminate against any individual with respect to such

individual's compensation, terms, conditions, or privileges of employment because of

such individual's race, color, religion, sex, sexual orientation, gender identity, marital

status, pregnancy, childbirth or related medical conditions including lactation, **age**, status

as a veteran, or national origin."[6]

171.    Plaintiff suffered termination on account of his age as detailed in Count I of this

Complaint.

172.    Defendant terminated Plaintiff on July 31, 2020 on account of his age.

173.    Defendant, by terminating Plaintiff on account of his age, acted in contravention of stated

Virginia Policy prohibiting age discrimination in employment.

174.    The VVA specifically expands the definitions of and liability for, employment

discrimination on account of age, echoing federal employment statutes.

175.    The expansion of the Virginia Human Rights Act through the VVA prohibiting age

discrimination in employment is a clear expression of Virginia Public Policy in

opposition to age discrimination.

176.    By terminating the Plaintiff on account of his age as described in Count I of this

Complaint the Defendant wrongfully terminated the Plaintiff in contravention of the

public policy stated in the VVA.

---

[5] Virginia Code § 2.2-3905
[6] *Id*. (Emphasis added)

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgement against the Defendant as follows:

1. Appropriate declaratory relief declaring the acts and practices of Defendant to have been in violation of Mr. Hice's rights as secured by the ADEA, 29 U.S.C. §§ 621, *et seq.*,; ADA, 42 U.S.C. § 12101, *et seq.*; and the VVA, Virginia Code § 2.2-3606, *et seq.*;

2. Permanently enjoin Defendant, its assigns, successor, agents, employees, and those acting in concert with them from engaging in discrimination against employees;

3. For appropriate actual damages against Defendant for violations of the Age Discrimination in Employment Act and Americans with Disabilities Act,

   a. $45,000 in Back Payment of Plaintiff's wages from the time of termination to present (calculated to date of filing); and further for backpayment of Plaintiff's from time of filing onward.

   b. $15,000 in Back Payment of scheduled bonuses and raises.

   c. $15,000 in Payment for loss of benefits such as health insurance, dental insurance, vision insurance, prescription insurance, and other benefits of employment as a result of Plaintiff's wrongful termination.

   d. $36,000 in lost 401(k) through taxes, contribution loss, and withdrawal in a down market caused by Defendant's discrimination against Plaintiff.

   e. $180,000 in Front payment of the loss of income, including incremental raises and bonuses, suffered by Plaintiff as a result of his unlawful termination for a period of five years to enable Plaintiff to obtain similarly compensated employment as it is unlikely Plaintiff will ever regain his previous income level.

4.  For appropriate liquidated damages against Defendant for willful violation of the Age

    Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, in amounts equal to

    damages awarded to Plaintiff for back pay and benefits;

5.  For compensatory damages resulting from the wrongful discharge of Plaintiff in violation

    of public policy in amounts no less than $250,000 for stress, emotional distress,

    inconvenience, loss of enjoyment, humiliation, and loss of reputation;

6.  For punitive damages in the amount of $350,000 for willful violation of the ADA under

    COUNT II of this Complaint;

7.  For punitive damages in the amount of $350,000 for punitive damages for willful

    violation of the ADA under COUNT III of this Complaint;

8.  For punitive damages in the amount of $350,000 for punitive damages for wrongful

    termination in contravention of public policy as described under COUNT IV of this

    Complaint;

9.  For all other wages and benefits lost or denied;

10. For an award to Plaintiff of his reasonable attorney's fees, and costs incurred in this

    action, together with expert witness fees and expenses;

11. For an award of any additional amounts necessary to offset the adverse tax consequences

    of an award received in a lump sum;

12. For an award of pre-judgement and post-judgement interest on any monetary award; and

13. For an Order of any other relief this Court deems to be just and proper.


## **DEMAND FOR JURY TRIAL**

14. Mr. Hice, pursuant to Rule 38 of the Federal Rules of Civil Procedure, hereby

    demands a trial by jury in this action for all claims so triable.

Respectfully Submitted,

RAYMOND HICE


_____/s/_____
Brandon T. Bybee (VSB# 92140)
William B. Barteau (VSB# 93381)
BRANDON T. BYBEE, P.L.C.
208 E. Plume Street, Suite 327
Norfolk, VA 23510
Tel: (757) 568-0090
Fax: (866) 568-0090
brandon@bybeelegal.com
william@bybeelegal.com
*Counsel for Plaintiff*