**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | | |
|---|---|---|
| **RAYMOND HICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 2:21-cv-00281-RBS-RJK** |
| | ) | |
| **MAZZELLA LIFTING** | ) | |
| **TECHNOLOGIES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Mazzella Lifting Technologies, Inc. ("Mazzella Lifting") and Mazzella JHH

Company, Inc. ("Mazzella JHH"), by counsel, submit this Reply in support of their Motion to

Dismiss Plaintiff's Amended Complaint. (ECF Nos. 19, 20.)

**INTRODUCTION**

Plaintiff's Amended Complaint fails as a matter of law because (1) Plaintiff fails to plead

sufficient facts to support a cause of action against Mazzella Lifting; (2) with respect to Plaintiff's

Americans with Disabilities Act claims, Plaintiff offers nothing more than unsupported,

conclusory allegations that are insufficient to state a claim; and (3) Plaintiff's allegations are

insufficient to bring a claim under *Bowman*[1] or the Virginia Human Rights Act ("VHRA").

Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss (ECF No. 21, or

"Response Brief") does nothing to cure the Amended Complaint's defects. The Response Brief

contains no authority to support Plaintiff's ADA discrimination or perceived disability claim.

_____

[1] *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985).

Similarly, the Response Brief offers no case law to suggest Plaintiff may bring a cause of action under *Bowman* or the VHRA. Importantly, a motion to dismiss tests the sufficiency of the Amended Complaint—not the Response Brief—and the allegations in Counts II, III, and IV of Plaintiff's Amended Complaint fail as a matter of law and should be dismissed.

Defendants respectfully request the Court grant this motion and dismiss Mazzella Lifting from this matter with prejudice. Further, Defendants respectfully request the Court dismiss Counts II, III, and IV from this action with prejudice.

## ARGUMENT

I.   **PLAINTIFF FAILS TO ASSERT FACTS TO SUPPORT HIS CLAIM THAT MAZZELLA LIFTING IS A PROPER DEFENDANT**

Plaintiff claims that Mazzella Lifting is a proper defendant solely because Mazzella Lifting is the alleged "parent" of Mazzella JHH. Plaintiff asserts: "Mazzella Lifting Technologies, Inc., . . . employed Plaintiff through its subsidiaries and affiliates." (Am. Compl. ¶ 8.) Plaintiff now claims in his Response Brief that Mazzella Lifting is a proper defendant because Mazzella Lifting is Mazzella JHH's parent company. (ECF No. 21 at 2-3.) Assuming Mazzella Lifting is Mazzella JHH's parent company as claimed, Plaintiff's allegations are insufficient to involve Mazzella Lifting in this litigation.

In support of this argument, Plaintiff cites to a single case that involves copyright infringement. This case noted that:

> Although there is no Fourth Circuit authority on when a parent company may be held *vicariously liable* for copyright infringement by a subsidiary, persuasive authority from other circuits holds that a parent company is vicariously liable for the infringing acts of a subsidiary where there is a "substantial and continuing connection between the two with respect to the infringing acts."

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 43 F. Supp. 3d 644, 663 (E.D. Va. 2014), *aff'd*, 790 F.3d 532 (4th Cir. 2015), *as amended* (June 24, 2015) (emphasis added) (citing

*Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.*, 886 F.2d 1545, 1553 (9th Cir. 1989); *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1518 (11th Cir. 1990)).

Plaintiff's reliance on this case is misplaced. This is not a copyright infringement case nor has Plaintiff alleged Mazzella Lifting is vicariously liable for some act of Mazzella JHH. While both the ADEA and the ADA provide for liability against employers, an employee must allege facts to support his or her claim that the named entity in fact employed the employee. The allegation that Mazzella Lifting "through Mazzella JHH employs workers in Virginia" is not enough. The allegation that Mazzella Lifting is Mazzella JHH's parent company is also insufficient to include Mazzella Lifting in this action. *See Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987) ("Flowers cannot be the employer simply because it is the parent company of WVB and Lynchburg. A parent company is the employer of a subsidiary's personnel only if it controls the subsidiary's employment decisions or so completely dominates the subsidiary that the two corporations are the same entity.")

Plaintiff offers no facts in the Amended Complaint to suggest that Mazzella Lifting has any role in controlling Mazzella JHH's employment decisions. Plaintiff makes no factual allegations to support that Mazzella Lifting is a proper defendant. *See Posante v. Lifepoint Hosps., Inc.*, No. 4:10-CV-00055, 2011 WL 3679108, at *3 (W.D.Va. Aug. 23, 2011); *Hager v. First Virginia Banks, Inc.*, Case No. 7:01–cv–00053, 2002 WL 57249, at *4–5 (W.D.Va. Jan. 10, 2002) (noting that, in an ADA case, if a defendant is not the plaintiff's employer, then the ADA claim must fail).

Under the joint employer doctrine, "two parties can be considered joint employers and therefore both be liable . . . if they 'share or co-determine those matters governing the essential terms and conditions of employment.'" Plaintiff has alleged no facts to allow this Court to find

that Mazzella Lifting is a joint employer under the ADEA or ADA.  *Butler v. Drive Auto. Indus.*, 793 F.3d 404, 408 (4th Cir. 2015) (quoting *Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc)); *see Mason v. Sun Recycling, LLC*, 2020 WL 1151046, at *8 (D. Md. Mar. 9, 2020) (applying joint employment doctrine to find that the defendant constituted a joint employer of the plaintiff for purposes of the plaintiff's Title VII and ADA claims).

To determine whether a supposed employer in fact constitutes an "employer" under the joint employment doctrine, the Fourth Circuit has adopted the "hybrid test," which requires district courts to consider nine factors:

(1) authority to hire and fire the individual;

(2) day-to-day supervision of the individual, including employee discipline;

(3) whether the putative employer furnishes the equipment used in the place of work;

(4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;

(5) the length of time during which the individual has worked for the putative employer;

(6) whether the putative employer provides the individual with formal or informal training;

(7) whether the individual's duties are akin to a regular employee's duties;

(8) whether the individual is assigned solely to the putative employer; and

(9) whether the individual and putative employer intended to enter an employment relationship.

*Butler*, 793 F.3d at 414.  Of these factors, none are dispositive, though the degree of control that a putative employer has over an employee "remains the 'principal guidepost' in the analysis." *Id.* Therefore, the first three factors, which speak to control, "are the most important." *Id.*

Plaintiff's Amended Complaint contains no allegations whatsoever that Mazzella Lifting had the authority to hire or fire Plaintiff; managed the day-to-day supervision of Plaintiff; furnished the required equipment for his job; maintained responsibility for Plaintiff's employment records; provided training; or whether there is any relationship whatsoever between Plaintiff and Mazzella Lifting.

Under the "integrated employer" doctrine, a plaintiff may also attempt to assert liability against two entities.  Here, Plaintiff asserts no facts that would allow this Court to find that Mazzella Lifting and Mazzella JHH are an integrated enterprise, either.[2]  "A parent company is the employer of a subsidiary's personnel only if it controls the subsidiary's employment decisions or so completely dominates the subsidiary that the two corporations are the same entity." *United States v. Universal Health Servs.*, No. 1:07-cv-54, 2010 U.S. Dist. LEXIS 116432, at *18, 2010 WL 4323082 (W.D. Va. Oct. 31, 2010) (quoting *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987)).

To determine whether two entities are an integrated employer under this doctrine, the court considers the following four factors: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." *Universal Health Servs.*, 2010 U.S. Dist. LEXIS 116432, at *19, 2010 WL 4323082.  As discussed above, Plaintiff's Amended Complaint contains no facts to

---

[2] Under the single employer doctrine, a "'parent company and its subsidiary can be considered a single employer for purposes of Title VII liability.'" *Butler*, 793 F.3d at 408 n.3 (quoting *Murphy-Taylor*, 968 F. Supp. 2d at 725).  But "[t]he fact of a parent-subsidiary relationship between the two companies is not sufficient, as a matter of law, to impute liability to [the parent] for the alleged discriminatory actions of its subsidiary." *United States v. Universal Health Servs.*, No. 1:07-cv-54, 2010 U.S. Dist. LEXIS 116432, at *18, 2010 WL 4323082 (W.D.Va. Oct. 31, 2010) (alterations in original) (quoting *Gordon v. Fort Mill Ford, Inc.*, No. 0:07-992, 2009 U.S. Dist. LEXIS 24164, at *8, 2009 WL 792501 (D.S.C. Mar. 23, 2009)).

suggest Mazzella Lifting and Mazzella JHH share common management, have interrelated operations, or any degree of common ownership or control.  The lack of factual allegations in the Amended Complaint related to Mazzella Lifting is fatal to Plaintiff's claim against it.  For this reason, Mazzella Lifting respectfully requests that the Court dismiss Mazzella Lifting from this action *with prejudice.*

II.    PLAINTIFF'S AMENDED COMPLAINT LACKS SUFFICIENT FACTS TO ADVANCE HIS DISABILITY DISCRIMINATION CLAIM IN COUNT II

   A. *Plaintiff Fails To Allege Facts To Support He Suffers From An "Actual Disability" Under The ADA*

Plaintiff's Amended Complaint asserts that he has "degenerative arthritis that impacts his ability to use his back and legs without excessive and debilitating pain." (Am. Compl. ¶ 39.)  In a conclusory manner, Plaintiff refers to this as a "disability." (Am. Compl. ¶ 40.)  Plaintiff also asserts his supervisor allowed "him to work without dealing with the 3-inch material, as doing so caused him excessive pain." (Am. Compl. ¶ 43.)  Plaintiff includes in the Amended Complaint that his "disability caused him debilitating pain and discomfort when performing certain actions with his legs and back." (Am. Compl. ¶ 126.)  In his Response Brief, Plaintiff maintains that he sufficiently alleged he was "so limited by his pain that he had to be precluded from operating certain materials at his job" and that this is sufficient to allege he suffered from a disability.  The case law suggests these allegations are insufficient to state a claim for discrimination under the ADA.

The ADA defines "disability" using a three-pronged approach: (1) with an "actual" disability, an individual has "a physical or mental impairment that substantially limits one or more major life activities" of the individual; (2) with a "record" disability, an individual has "a record of such an impairment;" and (3) with a "regarded as" disability, an individual is "regarded as

6

having such an impairment." 42 U.S.C. § 12102(1).  A plaintiff may proceed in the alternative arguing disability under all three prongs of the definition of disability. *See, e.g., Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 236-38 (4th Cir. 2016); *see also* 29 C.F.R. § 1630.2(g)(2) ("An individual may establish coverage under any one or more of these three prongs of the definition of disability.").

Here, the Amended Complaint includes allegations related to an alleged "actual" disability—arthritis.  The ADA defines "disability" as "[a] physical or mental impairment that *substantially limits one or more major life activities of such individual*." 42 U.S.C. § 12102(1)(A) (emphasis added); *see also* 29 C.F.R. § 1630.2(j)(1)(ii) (defining impairment as disability under ADA "if it substantially limits the ability of an individual to perform a major life activity *as compared to most people in the general population*") (emphasis added).  The statute defines major life activities to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* (citing 42 U.S.C. § 12102(2)(A)).

To state a claim for discrimination under ADA, a plaintiff must assert facts to allow the reasonable inference that he or she suffered from a physical or mental impairment that substantially limits one or more major life activities as compared to most people in the general population. *See Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 875 (4th Cir. 2020).  Plaintiff attempts to differentiate the conclusory allegations in his Amended Complaint with those that the Fourth Circuit readily dismissed in *Miller.*  Contrary to Plaintiff's assertions, the plaintiff in *Miller* alleged that he suffered a neck injury and that the "injury caused him *difficulties* with lifting, running, sleeping, driving, and pulling and turning his neck." *Miller*, 813 F. App'x at 876.

While the plaintiff in *Miller* alleged that he had difficulty with major life activities – lifting and sleeping - the district court found that the plaintiff had failed to allege that he was "substantially limited as a result of his injury." *Miller*, 813 F. App'x at 876.  The Fourth Circuit noted that a plaintiff's claim that he "suffered difficulties lifting and sleeping falls well short of alleging he was limited as compared to most people in the general population." *Id.* (citations and quotations omitted).

Here, Plaintiff offers no facts to suggest that he was substantially limited as compared to most people in the population.  (*See* Am. Compl. ¶¶ 39, 40, 43, 126).  Plaintiff relies heavily on his allegation that he experienced "pain," but the allegation that he suffered pain does not supply sufficient facts to allow the court to infer he was disabled such that substantially limited in any particular life activity as a result of that pain.  Although performing manual tasks and working are listed as major life activities, Plaintiff does not include sufficient factual support to claim that his arthritis substantially limited his ability to perform manual tasks or work compared to the general population.  To the contrary, Plaintiff does not claim he was "substantially limited" at all.  He claims he "performed all the tasks required of him" (Am. Compl. ¶ 47) and that "despite this disability, Plaintiff was more than capable of performing the essential functions of his position from the beginning of his employment, up to and including until he was terminated." (Am. Compl. ¶ 127.)  Plaintiff does not claim that cutting three-inch cable was somehow a major life activity for most people in the population.

Merely stating in a conclusory manner that one has a disability and suffered discrimination fails to raise a right to relief above the speculative level.  *See Twombly*, 550 U.S. at 555, 570.  Because Plaintiff offers nothing more than "legal conclusions couched as factual allegations" in support of his claim he was a qualified individual under the ADA,  Defendants respectfully request

the Court grant this motion and dismiss Plaintiff's ADA discrimination claim *with prejudice*. *See Miller*, 813 F. App'x at 874.

For these reasons, Defendants respectfully request that the Court grant this motion to dismiss and dismiss Plaintiff's ADA discrimination claim.  *See Miller*, 813 F. App'x at 876; *Rhoads*, 257 F.3d at 380.

>    B.  *Plaintiff Fails To State Facts To Support He Has A "Record Of" A Disability*

In his Response Brief, Plaintiff asserts now that he qualifies as "disabled" because he has a "record of an impairment." (ECF No. 21 at 6.)  Plaintiff seems to claim now that because he was allegedly provided a reasonable accommodation, he had a record of having a disability.  Plaintiff claims in his Response Brief that he has "established that his employer knew of his disability," that his employer "permitted him a reasonable accommodation," and that this "establishes a record of impairment." (ECF No. 21 at 7.)

As an initial matter, Plaintiff did not allege he had a "record" of an impairment in Count II of the Amended Complaint.  Plaintiff cannot amend his complaint through his opposition brief and any new allegations he asserts in the opposition brief must be disregarded.  *Odjaghian v. HHS Tech. Grp., LLC*, No. 19-1491, 2021 WL 798093, at \*5 (4th Cir. Mar. 2, 2021) (quoting *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184-85 (4th Cir. 2013)) ("'[I]t is . . . well-established that parties cannot amend their complaints through briefing.'").

The allegations in the Amended Complaint are based on his alleged "actual" disability— namely his alleged arthritis.  There are no allegations to suggest that he has stated a claim based on having a "record" of a disability.  Under Count II, Plaintiff alleges he was "terminated on account of his disability." (Am. Compl. ¶ 124.)  He further alleges that he was a "qualified disabled

individual" and was "diagnosed with severe arthritis." (Am. Compl. ¶ 125.) Plaintiff claims he suffered an "adverse employment action on account of his disability." (Am. Compl. ¶ 130.) Nowhere in Count II does Plaintiff assert that Defendants discriminated against him because he had a record of a disability.

A plaintiff has a record of disability where he or she has "a history of, or has been misclassified as having, a . . . physical impairment that substantially limits one or more major life activities." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 153 (4th Cir. 2012) (quotation omitted). Plaintiff has failed to allege facts to suggest that Defendants knew, had records, or had misclassified Plaintiff as having a physical impairment that substantially limits one or more major life activities. *See Okyere v. John Bean Techs. Corp*., No. 5:20-CV-190-FL, 2020 WL 7625237, at *7 (E.D.N.C. Dec. 22, 2020). Plaintiff's allegation that his supervisor allowed him to refrain from cutting three-inch cable is also insufficient to state a record of disability claim. "The fact that an employee can engage in work, which is an enumerated major life activity, *see* 42 U.S.C. § 12102, under light duty restrictions, without more detail, does not adequately allege that an impairment 'substantially limits the ability of [the employee] to perform a major life activity as compared to most people in the general population.'" *Okyere*, 2020 WL 7625237, at *8 (citing 29 C.F.R. § 1630.2(j)(ii)); *see also Rakity v. Dillon Cos., Inc*., 302 F.3d 1152, 1161 (10th Cir. 2002) ("[A] history of light duty restrictions does not necessarily demonstrate a record of substantial limitation in working.")).

For these reasons, Plaintiff should not be allowed to attempt to state a "record of" impairment claim under Count II after he failed to allege such a claim in the Amended Complaint. Even assuming the Amended Complaint contained allegations related to a "record" of impairment claim under the ADA, the facts provided are insufficient to state such a claim. For the reasons

discussed above, Defendants respectfully request the Court dismiss Count II as to all Defendants *with prejudice.*

### III.   POTENTIAL IMPAIRMENTS DO NOT PROVIDE A CAUSE OF ACTION UNDER THE ADA

Plaintiff asserts in the Amended Complaint that "Defendant believed on account of his age, Plaintiff had a disability that made him overly susceptible to COVID-19 and therefore potentially unable to perform the essential functions of his position."  (Am. Compl. ¶ 150.)  Plaintiff also alleged that "Mazzella further perceived Mr. Hice to have another disability due to his age, susceptibility to the COVID-19 pandemic."  (Am Compl. ¶ 49.)  Plaintiff further asserted he was terminated "because he was perceived to be disabled on account of his susceptibility to COVID-19."  These allegations comprise Plaintiff's perceived discrimination claim.

Plaintiff seems to state in the Response Brief, which is not the model of clarity, that Defendants knew of his arthritis, which is not a disability "that he might have, but that his current arthritis and age would make him more susceptible for COVID-19." (ECF No. 21 at 8.)  These new allegations are unclear.  In any event, Plaintiff's assertions in the Response Brief do not alter the deficiencies in Plaintiff's perceived discrimination claim.

Plaintiff has failed to allege the essential elements of a perceived disability claim and he has failed to offer any facts to support such an allegation as required under *Twombly* and *Iqbal*. Plaintiff has brought a claim pursuant to his alleged "actual" disability—his arthritis—and thus this is not a basis for his perceived disability claim.  For the first time in his Response Brief, Plaintiff now claims he had a "record" of a disability, but because he failed to assert facts to support such an allegation in the Amended Complaint these allegations fail.  *See* Section II.B.  Finally, with respect to a "regarded as" claim, Plaintiff now claims he was regarded as having physical impairments—his arthritis and age—and that this would make him more susceptible to COVID-

19.  Regardless of how Plaintiff attempts to characterize his allegations, he cannot proceed with his claim that "Defendant believed on account of his age, Plaintiff had a disability that made him overly susceptible to COVID-19 and therefore potentially unable to perform the essential functions of his position."  (Am. Compl. ¶ 150.)

Plaintiff's "perceived disability" claim is unrelated to his arthritis.  Notably, nowhere under Count III does Plaintiff refer to his alleged arthritis at all.  (Am. Compl. ¶¶ 144-170.)  Plaintiff alleges only that Defendants perceived him to be "disabled and overly susceptible to COVID-19." (Am. Compl. ¶ 153.)  These facts are similar to the cases cited in the motion to dismiss.  *See E.E.O.C. v. STME, LLC*, 938 F.3d 1305, 1315 (11th Cir. 2019) ("we must conclude that the disability definition in the ADA does not cover this case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future due to the voluntary conduct of overseas travel.");  *Payne v. Woods Servs., Inc.*, No. CV 20-4651, 2021 WL 603725, at \*7 (E.D. Pa. Feb. 16, 2021) (quotations omitted);  *Parker v. Cenlar FSB*, No. CV 20-02175, 2021 WL 22828 at \*6 (E.D. Pa. Jan. 4, 2021) (citing 42 U.S.C. § 12102(2)(A)) ("[N]otwithstanding whether contracting COVID-19 is a disability under the ADA, *possible exposure to COVID-19* is not a physical or mental impairment that substantially limits one or more major life activities.").  The ADA's protections do not extend to future possible disabilities.  *See Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 335 (7th Cir. 2019), *reh'g denied* (Dec. 20, 2019);  *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104 (8th Cir. 2016); *EEOC v. BNSF Ry. Co.*, 902 F.3d 916 (9th Cir. 2018); *Adair v. City of Muskogee*, 823 F.3d 1297 (10th Cir. 2016); *EEOC v. STME, LLC*, 938 F.3d 1305 (11th Cir. 2019).

Plaintiff maintains that the out of circuit case law is unpersuasive; however, he cites to absolutely no case law in his Response Brief (ECF No. 21 at 7-8) to support his claim that he has

alleged a perceived disability claim.  Certainly, case law regarding perceived disability claims related to COVID-19 are relevant to the Court's analysis as this global pandemic began just last year and courts are for the first-time addressing ADA claims based on COVID-19.

For these reasons, Plaintiff's allegations that he is older and *might* be more susceptible in the future to COVID-19 are insufficient to state a claim under the ADA.

## IV.   THE VIRGINIA HUMAN RIGHTS ACT DOES NOT PROVIDE PLAINTIFF WITH A CAUSE OF ACTION

Plaintiff now claims that he is alleging a *Bowman* claim based on the short title and declaration of policy in the Virginia Human Rights Act, but that he is not bringing a claim under the VHRA.  In the Response Brief, Plaintiff now alleges that Defendants violated the policy of the Commonwealth by terminating him on account of his age *or disability*.  (ECF No. 21 at 8-10.)  In contrast, the Amended Complaint states only that Defendants allegedly violated the VHRA by terminating Plaintiff on account of his age—there is no mention whatsoever of *Bowman* or his alleged disability.

For instance, in the Amended Complaint, Plaintiff states that: "Virginia has a stated public policy against termination of employees on account of age."  (Am. Compl. ¶ 181.)  In the Amended Complaint, Plaintiff asserted only that Defendants allegedly acted in contravention of Virginia policy because the Virginia Values act "specifically expanded the definitions of and liability for, employment discrimination on account of age."  (Am. Compl. ¶¶ 182-183.)

As outlined in the motion to dismiss, the VHRA does not provide Plaintiff with a cause of action.  In order to state a cause of action under the VHRA for an age discrimination claim such a claim is limited to employers with "more than five but fewer than 20" employees. Va. Code § 2.2-3905.  Plaintiff alleges that Defendants employ over 300 individuals.  (Am. Compl. ¶ 10).  As a result, Plaintiff fails to state a claim for age discrimination claim under the VHRA because Plaintiff

alleges that Defendants employ more than 20 individuals. For this reason, Plaintiff's "wrongful termination" claim fails, and Defendants respectfully request that the Court grant this motion and dismiss Count IV as to all Defendants *with prejudice*.

With respect to Plaintiff's attempt to revive his claim under the Virginia Human Rights Act's "short title" and "declaration of policy," Plaintiff cannot do so. The VHRA does not provide him with a cause of action for an age discrimination claim nor does any *Bowman* exception apply to Plaintiff's at-will employment. *See* Va. Code § 2.2-3900.

Plaintiff's allegations remain insufficient to state a wrongful termination claim under *Bowman*. Virginia adheres to the common law doctrine of at-will employment, under which employment is generally terminable at any time, for any reason or for no reason at all. *Lockhart v. Commonwealth Educ. Sys.*, 247 Va. 98, 102, 439 S.E.2d 328 (1994). A narrow exception to this doctrine holds that an at-will employee may bring a tortious wrongful discharge claim—a "*Bowman* claim"—if the termination violates Virginia public policy as expressed in a Virginia statute. *Bowman v. State Bank of Keysville*, 229 Va. 534, 540, 331 S.E.2d 797 (1985).

In Virginia, a common law claim for wrongful discharge may be maintained only if one of three circumstances is met: (1) "an employer violated a policy enabling the exercise of an employee's statutorily created right;" (2) "the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy;" or (3) "the employee's refusal to engage in a criminal act." *Rowan v. Tractor Supply Co.*, 263 Va. 209, 213-14 (2002).

None of these exceptions apply here. There are no Supreme Court of Virginia cases or any other authority to suggest an employee may bring a wrongful discharge claim under *Bowman* based on an allegation that his or her employer violated the policy outlined in the VHRA—when the

14

employee has no cause of action under the VHRA.  In contrast, Virginia courts have regularly held

that "when a statute creates a right and provides a remedy for the vindication of that right, then

that remedy is exclusive unless the statute says otherwise."  *Concerned Taxpayers of Brunswick*

*Cty. v. Cty. of Brunswick*, 249 Va. 320, 330, 455 S.E.2d 712, 717 (1995); *see Carmack v. Virginia*,

No. 1:18-CV-00031, 2019 WL 1510333, at \*13 (W.D. Va. Apr. 5, 2019) (citing cases).[3]

The VHRA provides its own extensive remedial scheme and the statute contemplates

employees bringing a cause of action based on age discrimination under the statute.  Had the

legislature intended for the VHRA to cover Plaintiff's employer, the legislature would have

included that any employer, regardless of size, could be sued under the VHRA for discrimination

based on age.  The legislature did not do so.  Plaintiff cannot work around this by bringing a

*Bowman* claim based on the policy reasons explained in the VHRA.  *See Rowan v. Tractor Supply*

*Co.*, 263 Va. 209, 213, 559 S.E.2d 709, 711 (2002) ("While virtually every statute expresses a

public policy of some sort, we continue to consider this exception to be a 'narrow' exception and

to hold that 'termination of an employee in violation of the public policy underlying any one

---

[3] *See, e.g., Humphrey v. Columbia/HCA John Randolph, Inc.*, 46 Va. Cir. 109, 111 (Cir. Ct. 1998) (Virginia Drug Control Act contains "a specific criminal penalty and enforcement mechanism" that "underscores the intent of the legislature that this statute was not to have a separate mechanism or civil enforcement under the exception to the employment-at-will doctrine"); *Judy v. Nat'l Fruit Prod. Co.*, 40 Va. Cir. 244, 244-45 (Cir. Ct. 1996) (Va. Code Ann. § 40.1-51.2:2 provides a remedy for employees "discharged or otherwise discriminated against . . . [because the employee has filed a safety or health complaint]," and therefore it cannot support a *Bowman* claim); *Pruitt v. Johnston Mem'l Hosp., Inc.*, 21 Va. Cir. 188, 188-89 (Cir. Ct. 1990) (holding that the availability of a statutory remedy for employee complaining of unsafe working conditions pursuant to the Virginia Safety Act, Va. Code Ann. § 40.1-44.1, *et seq.*, precludes the bringing of a *Bowman* claim); *Cauthorne v. King*, 30 Va. Cir. 202, 203-05 (Cir. Ct. 1993) (Virginia Fair Housing Law, Va. Code Ann. § 36-96.1, *et seq.*, provides its own remedies and therefore cannot support a separate *Bowman* wrongful discharge claim); *Gochenour v. Beasley*, 47 Va. Cir. 218, 224 (Cir. Ct. 1998) ("It has been long held that a civil statute which prohibits certain activity and provides specific remedies for an aggrieved party is self-contained and it is not the intent of the Legislature that it . . . could also serve as the basis of a *Bowman* type claim.").

15

[statute] does not automatically give rise to a common law cause of action for wrongful discharge.'").

For these reasons, Defendants respectfully request that the Court grant this motion and dismiss Count IV with prejudice as to all Defendants.

**CONCLUSION**

For these reasons, Mazzella Lifting respectfully requests that it be dismissed from this action with prejudice.  Defendants further request that the Court dismiss Counts II, III, and IV of the Amended Complaint with prejudice.

Dated: September 7, 2021

Respectfully submitted,

**MAZZELLA LIFTING TECHNOLOGIES, INC., AND MAZZELLA JHH COMPANY, INC.**

By Counsel

*/s/ Eve G. Campbell*
Eve Grandis Campbell (VSB No. 41490)
Mary Grace Miller (VSB No. 86368)
O'HAGAN MEYER PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7109
Facsimile: (804) 237-0250
Email: ecampbell@ohaganmeyer.com
Email: mgmiller@ohaganmeyer.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of September, 2021, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to counsel of record.

/s/ Eve G. Campbell
Eve Grandis Campbell (VSB No. 41490)
O'HAGAN MEYER PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7109
Facsimile: (804) 237-0250
Email: ecampbell@ohaganmeyer.com

*Counsel for Defendants*