UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RAYMOND HICE,

          Plaintiff,

v.                                    CIVIL NO. 2:21cv281

MAZZELLA LIFTING TECHNOLOGIES, INC.,
& MAZZELLA JHH COMPANY, INC.,

          Defendants.

## MEMORANDUM ORDER

This matter comes before the court on Defendants' "Motion to Dismiss for Failure to State a Claim" ("Motion to Dismiss"), filed on August 16, 2021, ECF No. 19.

### I. Procedural Background

Plaintiff filed the Complaint on May 19, 2021. ECF No. 1. Defendants filed their first motion to dismiss on July 20, 2021. ECF No. 12. Plaintiff then filed an Amended Complaint on August 2, 2021.[1] ECF No. 17. The Amended Complaint names as Defendants Mazzella Lifting Technologies, Inc. ("Mazzella Lifting") and Mazzella JHH Company, Inc. ("Mazzella JHH"), and asserts claims for age discrimination under the Age Discrimination in Employment Act ("ADEA")[2] (Count One), disability discrimination

---

[1] "A party may amend its pleading once as a matter of course within" twenty-one (21) days after service of a motion to dismiss. Fed. R. Civ. P. 15(a)(1)(B).

[2] 29 U.S.C. § 623.

under the Americans with Disabilities Act ("ADA")[3] (Count Two), perceived disability discrimination under the ADA[4] (Count Three), and wrongful termination against a stated Virginia public policy in the Virginia Human Rights Act ("VHRA")[5] (Count Four).

On August 16, 2021, Defendants filed the Motion to Dismiss and Memorandum in Support, asserting that Mazzella Lifting is improperly named in the suit and that Counts Two, Three, and Four of the Amended Complaint fail to state plausible claims against either Defendant under Fed. R. Civ. P. 12(b)(6). ECF Nos. 19-20. On August 30, 2021, Plaintiff filed a Response in opposition. ECF No. 21. On September 7, 2021, Defendants filed a Reply. ECF No. 22.[6]

## II. Motion to Dismiss

A complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

---

[3] 42 U.S.C. § 12101.

[4] Id.

[5] Plaintiff cites Va. Code Ann. §§ 2.2-3900 and 2.2-3905 (2020) as establishing a Virginia public policy against age discrimination in employment. See ECF No. 21 at 9.

[6] Due to an internal oversight, this matter was not brought to the court's attention until January 13, 2022.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means that a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The court does not, however, accept as true conclusory statements that are not supported by factual allegations. See id.

## A. Factual Background

For purposes of ruling on the Motion to Dismiss, the court accepts as true the following facts alleged in the Amended Complaint and views these facts in the light most favorable to the Plaintiff. See Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005).

Plaintiff was directly employed by Mazzella JHH starting in 2018. See Am. Compl. ¶¶ 9, 17. Mazzella JHH is a subsidiary of Mazzella Lifting. Id. at ¶ 9. Plaintiff held the position of socket pourer, with Larry Lusk ("Lusk") as Plaintiff's supervisor. Id. at ¶ 18. Socket pourer is a specialized skill even among those qualified as "riggers" and is critical to many of the contracts performed by Mazzella JHH. Id. at ¶¶ 19, 22. The "job was essential to the continued operation of [Defendants'] profits." Id. at ¶ 69.

Plaintiff was qualified to hold the position of socket pourer. Id. at ¶¶ 20-21. Throughout his employment, Plaintiff had been an effective employee who received scheduled raises without issue.

3

Id. at ¶¶ 29-30, 35-36. Plaintiff "had no outstanding personal issues, was diligent and efficient as a worker, and conformed to all of [Defendants'] requirements." Id. at ¶ 67.

Plaintiff has degenerative arthritis "that impacts his ability to use his back and legs without excessive and debilitating pain." Id. at ¶ 39. Mazzella JHH knew about the degenerative arthritis diagnosis when hiring Plaintiff. See id. at ¶¶ 40, 42. When Lusk hired Plaintiff, Lusk granted Plaintiff accommodations that allowed Plaintiff to work without doing parts of the job that caused him excessive pain. Id. at ¶¶ 43, 45. Mr. Lusk allowed Plaintiff to work without handling any duties related to the "three-inch cable." Id. With the accommodations, Plaintiff has been able to "perform all of the necessary functions of his position at a high level." Id. at ¶ 41.

In April 2020, Plaintiff was furloughed. Id. at ¶ 56. Plaintiff was "only one of two riggers furloughed, despite his work 'socket pouring' having no decrease in demand." Id. at ¶ 57. Plaintiff was furloughed for about a month prior to his termination. Id. at ¶ 59. On July 31, 2020, Plaintiff was notified that he was being "laid off" with "no plans to return you to work." Id. at ¶ 62 and Exhibit B.[7] Even though he met or exceeded all

---

[7] The letter notification bears the heading of "Mazzella Companies." See Am. Compl. at Exhibit B. Interestingly, the letter does not bear the specific name of either defendant named in this suit. However, the letter contains language throughout referring

4

expectations of employment prior to his termination, Plaintiff "was the only rigger who was ultimately terminated." Id. at ¶¶ 55, 60. Plaintiff's employers explained the termination as resulting from COVID-19's financial impact. See id. at ¶ 83. However, neither Plaintiff nor Defendants experienced a decline in work or profitability during the COVID-19 pandemic. Id. at ¶ 64. Defendants' business did not slow, and Mazzella JHH continued to hire new employees at the time it terminated Plaintiff. Id. at ¶ 84.

When Mazzella JHH terminated Plaintiff, Plaintiff was the highest paid and oldest rigger in the rigger division. Id. at ¶ 34. At sixty-seven (67) years old, Plaintiff was about ten (10) years older than the next oldest similarly situated employee and about twenty-five (25) years older than most of the other riggers. Id. at ¶¶ 37-38. At that time, Plaintiff "was the only employee with the skills and qualifications to perform the socket pourer job." Id. at ¶ 65. Mazzella JHH replaced Plaintiff shortly after his termination with a significantly younger and non-disabled socket pourer. See id. at ¶¶ 70, 73, 76. Mazzella JHH did not eliminate any positions when Plaintiff was terminated. Id. at ¶ 81.

---

to "the Company," as if it and any subsidiaries are one entity. See id.

5

On November 24, 2020, one hundred sixteen (116) days after his termination,[8] Plaintiff timely filed a discrimination claim with the Equal Employment Opportunity Commission ("EEOC") regarding age discrimination based on his termination. Id. at ¶ 86; see Am. Compl. at Exhibit C. On December 11, 2020, one hundred thirty-three (133) days after his termination,[9] Plaintiff timely supplemented the claim with claims for disability and perceived disability discrimination based on his termination.[10] Am. Compl. ¶ 87; see Am. Compl. at Exhibit D. The EEOC issued its decision of dismissal and notice of rights as to Plaintiff's claims on February 24, 2021. See Am. Compl. at Exhibit A.[11] Plaintiff timely filed suit on May 19, 2021, within the ninety (90) day

---

[8] Charges of unlawful employment discrimination must be first filed with the EEOC within one hundred eighty (180) days after the alleged discrimination occurred. See U.S. Equal Employment Opportunity Commission, Time Limits for Filing a Charge, https://www.eeoc.gov/time-limits-filing-charge (last visited on March 3, 2022).

[9] See supra note 8.

[10] The court notes that Plaintiff's EEOC claim, and supplement, refer to "Mazzella Lifting Technologies, Inc.," "Mazzella Company," and "Mazzella," using the terms interchangeably without distinguishing between the entities. See Am. Compl. at Exhibits C and D.

[11] The EEOC ended its investigation, making "no determination about whether further investigation would establish violations of the statute." Am. Compl. at Exhibit A. The EEOC noted that closing the investigation does not mean the claims have no merit and does not certify that the respondent complied with the statutes. See id. The EEOC made no findings as to the merits of any issues that "might be construed as having been raised by this charge." Id.

deadline from the receipt of the EEOC notice of dismissal. See ECF No. 1; Am. Compl. at Exhibit A. Finally, Plaintiff alleges that he has been unable to find comparable work "and has suffered humiliation, loss of income, and general suffering as a result." Am. Compl. ¶ 88.

## B. Merits of Defendants' Motion

Defendants' Motion to Dismiss asserts that Mazzella Lifting is not a proper party to this suit and challenges the sufficiency of Counts Two through Four of the Amended Complaint. ECF No. 19 at 1.

### 1. Mazzella Lifting as a Party to the Litigation

For Mazzella Lifting to remain a defendant, Plaintiff must allege a sufficient basis for the claim that Mazzella Lifting was his employer. See Johnson v. Flowers Indus., Inc., 814 F.2d 978, 979-80 (4th Cir. 1987); see also 29 U.S.C. § 630(f) (defining the term "employee" under the ADEA as "an individual employed by any employer"); 42 U.S.C. § 12111(4) (same for the ADA); Va. Code Ann. § 2.2-3905(A) (2020) (same for the VHRA). Plaintiff alleges that Mazzella Lifting "through Mazzella JHH employs workers in Virginia" like the Plaintiff. See ECF No. 21 at 2. However, Mazzella Lifting "cannot be [an] employer simply because it is the parent company of" Mazzella JHH. Johnson, 814 F.2d at 980. Because Mazzella JHH is a subsidiary of Mazzella Lifting, Mazzella Lifting "receives the benefits of the doctrine of limited liability." Id.;

see Am. Compl. ¶ 9. "[W]hen a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer." Johnson, 814 F.2d at 980.

Under the integrated employer doctrine, this presumption can be rebutted, but only if the parent "controls the subsidiary's employment decisions or so completely dominates the subsidiary that the two corporations are the same entity." Id.; see Hukill v. Auto Care, Inc., 192 F.3d 437, 442 (4th Cir. 1999), abrogated on other grounds by Arbaugh v. Y & H Corp., 546 U.S. 500 (2006). In determining whether to treat the parent and subsidiary as an integrated employer, courts look at factors including: "'(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control.'" Meyer v. Qualex, Inc., 388 F. Supp. 2d 630, 635 (E.D.N.C. 2005) (quoting Hukill, 192 F.3d at 442).

Plaintiff has not alleged that Mazzella Lifting and Mazzella JHH had "anything more than a normal parent-subsidiary relationship." Johnson, 814 F.2d at 981; see Am. Compl. ¶¶ 8, 9. Plaintiff tries to tie the Defendants together, arguing that Mazzella Lifting has a "specific financial interest in the employment decisions" of Mazzella JHH. ECF No. 21 at 3. No further detail is alleged. However, all parent companies have a financial interest in the employment decisions of subsidiaries. To sustain

a claim under the integrated employer doctrine at this stage, Plaintiff has to allege some indicia of control of the parent company over the subsidiary and its employment decisions. See Johnson, 814 F.2d at 982. Plaintiff has not alleged that Mazzella Lifting excessively interfered with the business operations or controlled the employment of Mazzella JHH. See id. at 981-82. But see supra notes 7 and 10.

The Fourth Circuit also recognizes the joint employer doctrine, where two parties can be considered joint employers of the same employee and therefore liable for employment discrimination "if they 'share or co-determine those matters governing the essential terms and conditions of employment.'" Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 408 (4th Cir. 2015) (quoting Bristol v. Bd. of Cnty. Comm'rs, 312 F.3d 1213, 1218 (10th Cir. 2002)). To determine if a party constitutes an "employer" under the joint employment doctrine, a district court must follow a "hybrid test," which includes nine factors:

> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including employee discipline;
> (3) whether the putative employer furnishes the equipment used in the place of work;
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
> (5) the length of time during which the individual has worked for the putative employer;
> (6) whether the putative employer provides the individual with formal or informal training;
> (7) whether the individual's duties are akin to a

regular employee's duties;
(8) whether the individual is assigned solely to
the putative employer; and
(9) whether the individual and putative employer
intended to enter an employment relationship.

Butler, 793 F.3d at 414 (footnote omitted). Of these factors, none
are dispositive, though the degree of control of the alleged
employer over the employee remains the key factor in the analysis.
See id. Therefore, the first three factors, which speak to control,
"are the most important." Id.

Plaintiff's Amended Complaint contains no allegations that
Mazzella Lifting could hire or fire Plaintiff; supervised
Plaintiff on a day-to-day level; or furnished the required
equipment for his job. Plaintiff also alleged few, if any, facts
addressing the other six factors in the hybrid test. But see supra
notes 7 and 10.

The court finds that Plaintiff has failed to allege sufficient
facts to allow the court to infer that Mazzella Lifting was an
employer of Plaintiff under either the integrated employer
doctrine or the joint employer doctrine. However, the court **GRANTS**
Plaintiff leave to amend the Amended Complaint to allege further
indicia of control. Plaintiff will have twenty-one (21) days from
the entry of this Memorandum Order to file a second amended
complaint in this regard. Accordingly, the court **GRANTS**
Defendants' Motion to Dismiss as to Mazzella Lifting and **DISMISSES**
Mazzella Lifting from this action without prejudice to Plaintiff's

10

ability to amend its pleading within the above-specified time period. Moreover, should discovery support a later amendment in this regard as to the proper defendant(s), Plaintiff may move to so file at that time.

## 2. Count Two: Actual Disability and Record of a Disability

The ADA prohibits covered employers from discharging qualified employees because they are disabled. 42 U.S.C. § 12112(a). The elements of a discrimination claim include: (1) a plaintiff was disabled; (2) he was a qualified individual; and (3) he suffered an adverse employment action based on his disability. See Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 572 (4th Cir. 2015). Defendants specifically contest whether, under the first element, Plaintiff has sufficiently alleged that he was disabled "within the meaning of the ADA." Rhoads v. F.D.I.C., 257 F.3d 373, 387 (4th Cir. 2001); see ECF No. 20 at 5.

Under the ADA, a "disability" may take any of the following forms: "(A) a physical or mental impairment that substantially limits one or more major life activities [the "actual disability" prong]; (B) a record of such an impairment [the "record of" prong]; or (C) being regarded as having such an impairment [the "regarded as" prong]. . . ." 42 U.S.C. § 12102(1) (emphasis added). Plaintiff may claim in the alternative under all three definitions of disability. See, e.g., Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 236-38 (4th Cir. 2016).

At this stage in the litigation, Plaintiff does not have to provide extensive detail as to his medical condition. He must merely plead a disability claim "above a speculative level." Bing v. Brivo Sys., LLC, 959 F.3d 605, 617 (4th Cir. 2020) (quoting Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)).

Plaintiff has alleged an impairment: degenerative arthritis. Am. Compl. ¶ 39. Plaintiff has also alleged the impairment limits the use of his legs and back. Id. In regard to alleging facts sufficient to sustain a claim that his arthritis substantially limits one or more major life activities, or that Defendants had a record of such a disability, the court notes that the ADA's implementing regulations provide clarification.[12] These regulations provide that "[t]he primary object of attention in

---

[12] In September 2008, Congress broadened the definition of "disability" by enacting the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 ("ADAAA"). See Summers v. Altarum Inst., Corp., 740 F.3d 325, 329 (4th Cir. 2014). The legislation reinstates "a broad scope of protection to be available under the ADA." Pub. L. No. 110-325, 122 Stat. 3553, § 2(b)(1). The ADAAA provides that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms." 42 U.S.C. § 12102(4)(A).

Congress also instructed that the term "substantially limits" be interpreted consistently with the liberalized purposes of the ADAAA. Id. § 12102(4)(B); see Summers, 740 F.3d at 329. In response to Congress, later regulations stated that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage" and that the term is "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i) (2020). As recognized in Summers, 740 F.3d at 331, Congress abrogated earlier inconsistent caselaw when it enacted the ADAAA.

cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of a disability." 29 C.F.R. § 1630.1(c)(4) (2020). "[T]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Pub. L. No. 110-325, 122 Stat. 3553, § 2(b)(5) (2008) (quoted in <u>Jacobs</u>, 780 F.3d at 572).[13]

For the reasons set forth in more detail below, the court finds that under Count Two, Plaintiff sufficiently alleges that his arthritis qualifies him as disabled under the ADA's actual disability and record of disability prongs. <u>See</u> Am. Compl. ¶¶ 39-48; ECF No. 21 at 3.

### i. Actual Disability Discrimination

Under the "actual disability" prong, the key question before the court is whether the Amended Complaint presents a viable claim that the arthritis substantially limited a major life activity. Ultimately, the court finds that this impairment and the pain it causes plausibly qualifies as a disability under the ADA.

Plaintiff alleges that his degenerative arthritis "impacts his ability to use his back and legs without excessive and debilitating pain." Am. Compl. ¶ 39. Plaintiff further alleges that he was granted a reasonable accommodation. <u>Id.</u> at ¶¶ 43, 44.

---

[13] <u>See</u> <u>supra</u> note 12.

Specifically, with regard to his limitations with work, Plaintiff also points to how excessive pain prevented him from completing a "normal part of the rigger position" known as working the "three-inch cable" and how he required and was given special accommodation to avoid this task. Id.; see ECF No. 21 at 5. The court can reasonably infer at this juncture that this type of pain could substantially limit lifting, performing certain manual tasks, bending, and working, all categories of major life activities recognized under the ADA.[14] See 42 U.S.C. § 12102(2)(A).

Defendant contends that Plaintiff's ability to work has not been substantially limited because he can complete his job without any problems. ECF No. 22 at 8. However, Plaintiff's ability to complete his job may be a result of the accommodation Defendants granted Plaintiff. Without that accommodation, Plaintiff may well have failed to meet the requirements of the position. His job success after accommodations does not preclude a finding of disability. Under the ADA, the determination of whether an impairment is substantially limiting "shall be made without regard to the ameliorative effects of . . . reasonable accommodations." 42 U.S.C. § 12102(4)(E)(i)(III); see Summers v. Altarum Inst.,

---

[14] Under the ADA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

14

Corp., 740 F.3d 325, 331 (4th Cir. 2014) (rejecting the district court's reasoning that, because the plaintiff could have worked with a wheelchair, he must not have been disabled).

Lastly, Defendants cite to Miller v. Maryland Department of Natural Resources, 813 F. App'x 869, 875-76 (4th Cir. 2020), for the proposition that Plaintiff has not adequately alleged a disability. See ECF No. 20 at 5-6. However, that case is distinguishable. In Miller, the Fourth Circuit, in an unpublished opinion, found that the plaintiff's allegations did not satisfy the pleading standard for an unlawful termination claim under the ADA. See 813 F. App'x at 876. However, in Miller, the plaintiff only alleged that he had a neck injury that resulted in herniated discs and which "caused him difficulties with lifting, running, sleeping, driving, and pulling and turning his neck." Id. at 875. The plaintiff "pled no more facts relating to his difficulties" and left the court to guess how the injury limited such activities. Id. Simply put, the plaintiff in Miller failed to allege specifically how he was "substantially limited" as a result of his injury. Id. at 875-76.

In contrast, Plaintiff in this case has alleged facts that support his claim that his arthritis substantially limited one or more major life activities. Plaintiff has specified that the arthritis caused him debilitating pain, limited the use of his back and legs, and required accommodations at work. The court has

a clearer picture of the disability and its consequences for Plaintiff than the district court did in <u>Miller</u>.

At this early juncture, drawing all reasonable inferences in Plaintiff's favor, his arthritis falls within the ADA's definition of disability. Plaintiff has sufficiently alleged he suffered an actual disability that substantially limited one or more major life activities.

### ii. Record of a Disability

"An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k) (2020). Plaintiff argues that his employer's past record of reasonable accommodations granted to Plaintiff for his disability allows the court to infer Plaintiff had a "record of having a disability." ECF No. 21 at 6–7. As the basis for his claim, Plaintiff alleges that he had a pre-existing arthritis diagnosis that Defendants knew about when Plaintiff was hired. <u>See</u> Am. Compl. ¶¶ 40, 42. Plaintiff alleges that his supervisor gave him a reasonable accommodation when he started the job because his arthritis limited what tasks he could accomplish. <u>See id.</u> at ¶¶ 44, 45. Finally, Plaintiff alleges that, through his supervisor, Defendants were aware of his arthritis. <u>See id.</u> at ¶ 48. Drawing all reasonable inferences in Plaintiff's favor, the court finds that Plaintiff has sufficiently alleged

that he had a record of a physical impairment that substantially limited one or more major life activities.[15]

For the reasons set forth in Sections B.2.(i)-(ii), the court **DENIES** Defendants' Motion to Dismiss as to the two disability claims, "actual" and "record of," under Count Two of the Amended Complaint.

### 3. Count Three: Perceived Disability

Under the ADA, a "regarded as" disability claim requires the individual to establish that he "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); see also Donaldson v. Trae-Fuels, LLC, 399 F. Supp. 3d 555, 559 (W.D. Va. 2019) (citing Mercado v. Puerto Rico, 814 F.3d 581, 588 (1st Cir. 2016)) (stating that for a "regarded as" claim a plaintiff does not need to plead whether the impairment substantially limited a major life activity). Whether a plaintiff is regarded as disabled "turns on the employer's perception of the employee." Id. (quoting Francis v. City of Meriden, 129 F.3d 281, 284 (2d Cir. 1997)).

---

[15] Discovery may be required to determine exactly what records Defendants had or could have discovered upon the disclosure of Plaintiff's arthritis when he began his employment.

In Count Three of the Amended Complaint, Plaintiff claims that Defendants perceived him as having a disability because of his age-related susceptibility to COVID-19.[16] Am. Compl. ¶¶ 149-50. However, Plaintiff has not sufficiently pled facts supporting this claim. Plaintiff states in conclusory terms that "Mazzella considered [Plaintiff] disabled and overly susceptible to the COVID-19 virus," without any factual basis for this claim other than that Defendants replaced Plaintiff with a younger employee. Am. Compl. ¶ 153.

Moreover, Plaintiff does not cite to precedent for the proposition that an employer's concern that an employee might get sick in the future could count as a perceived disability. See ECF No. 21 at 8. A perceived disability requires that an employer believes that an employee has a "physical or mental impairment." 42 U.S.C. § 12102(3)(A). Plaintiff fails to explain how a risk factor for COVID-19 like age counts as a physical impairment. While the Fourth Circuit has not ruled on whether the perception

---

[16] Plaintiff appears to state in his Response that Defendants also perceived his arthritis to be a disability or that it would make him more susceptible to COVID-19. See ECF No. 21 at 7-8. The court finds that Count Three of the Amended Complaint did not specifically include such allegations, with the exception of ¶ 145, which simply "reasserts and affirms the statements made in paragraphs 1-144." Am. Compl. at ¶ 145. Count Three focused on Plaintiff's age as a perceived disability. Therefore, the court holds that Plaintiff failed to allege sufficiently that Defendants perceived his arthritis as a disability and **DISMISSES** Plaintiff's "regarded as" disability claim as to his arthritis, absent specific allegations to this effect.

of a risk of COVID-19 qualifies as a "perceived" disability, the Eleventh Circuit addressed a similar question in the context of a potential risk of the Ebola virus during future foreign travel. See Equal Emp. Opportunity Comm'n v. STME, LLC, 938 F.3d 1305, 1315 (11th Cir. 2019). The Eleventh Circuit concluded that "the disability definition in the ADA does not cover this case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future." Id. Similarly, possible future exposure to COVID-19 does not constitute an impairment under the ADA.

Plaintiff's conclusory allegations that Defendants perceived his age as a disability because it is a COVID-19 risk factor are insufficient to state a claim under the ADA. Therefore, the court **GRANTS** Defendants' Motion to Dismiss as to Count Three of the Amended Complaint and **DISMISSES** Plaintiff's claim for a "regarded as" disability as to his age and susceptibility to COVID-19.[17]

### 4. Count Four: Termination in Violation of Public Policy

In Count Four of the Amended Complaint, Plaintiff asserts that when Defendants fired Plaintiff because of his age, Defendants violated a public policy articulated by the Commonwealth of Virginia in the Virginia Human Rights Act ("VHRA" or "the Act").

---

[17] To the extent Plaintiff has specific allegations that his arthritis constitutes a "regarded as" disability, he must file them in any second amended complaint. See supra note 16; infra Part III.

See Am. Compl. ¶¶ 173-74 (citing Va. Code Ann. § 2.2-3905); ECF No. 21 at 8-9 (citing Va. Code Ann. § 2.2-3900 (2020)).

In Virginia, employment is generally terminable at any time, for any reason, or for no reason at all. Lockhart v. Commonwealth Educ. Sys. Corp., 247 Va. 98, 102, 439 S.E.2d 328, 330 (1994). However, a "Bowman claim" allows an at-will employee[18] to bring a tortious wrongful discharge claim if the termination violates Virginia public policy as expressed in a Virginia statute. See Bowman v. State Bank of Keysville, 229 Va. 534, 540, 331 S.E.2d 797, 801 (1985).

In Virginia, a common law claim for wrongful discharge may be brought only under one of three circumstances: (1) "an employer violated a policy enabling the exercise of an employee's statutorily created right;" (2) "the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy;" or (3) "the employee's refusal to engage in a criminal act." Rowan v. Tractor Supply Co., 263 Va. 209, 213-14, 559 S.E.2d 709, 710-11 (2002).

---

[18] Defendants state that Plaintiff was an at-will employee while working for Mazzella JHH. See ECF No. 20 at 10; ECF No. 22 at 14. Plaintiff does not contest this assertion. For the purposes of this Motion to Dismiss, the court will assume Plaintiff's at-will employment status, although it remains unclear what entity was, or entities were, Plaintiff's employer. See supra notes 7 and 10; infra note 24 and accompanying text.

The VHRA prohibits age discrimination in employment. See Va. Code Ann. § 2.2-3905. Plaintiff, instead of making a claim under the VHRA, relies on the public policy against age discrimination stated in the VHRA as a basis for a common law Bowman claim.[19] See Am. Compl. ¶¶ 181-85; ECF No. 21 at 10; Va. Code Ann. § 2.2-3900(B)(2) (stating Virginia's policy to safeguard all individuals from unlawful discrimination because of age or disability).[20]

### i. History of VHRA Bowman Claims

The use of the VHRA as a basis for a common law unlawful termination claim has a complicated history. In 1994, the Virginia Supreme Court found that the VHRA articulated a policy against employment discrimination based upon race and gender, which did fall under the exception recognized in Bowman. See Lockhart, 247 Va. at 104, 106, 439 S.E.2d at 331-32. The court found that the Act could form the basis for a Bowman claim even though the Act stated: "Nothing in this chapter creates, nor shall it be construed

---

[19] Plaintiff's Response claims that he has an actionable Bowman claim for discrimination based on both age and disability. See ECF No. 21 at 9. However, the specific allegations in Count Four of the Amended Complaint, other than those generally incorporated in ¶ 170, allege only that Defendants violated the VHRA by terminating Plaintiff because of his age and does not mention his alleged disability. See Am. Compl. ¶¶ 171-185. In any event, given the court's analysis herein, a Bowman claim for age or disability would fail. See infra Part II(B)(4)(ii).

[20] See supra note 19 and accompanying text.

to create, an independent or private cause of action to enforce
its provisions." Va. Code Ann. § 2.1-725 (1994); see Lockhart, 247
Va. at 106, 439 S.E.2d at 332 (Compton, J., dissenting) (arguing
that the majority holding was contrary to the explicit language of
the Act).

In 1995, the Virginia General Assembly amended the Act to
state that nothing in the Act creates private causes of action to
enforce its provisions "except as specifically provided." Va. Code
Ann. § 2.1-725(A) (1995) (VHRA with the 1995 amendments); see Doss
v. Jamco, Inc., 254 Va. 362, 368, 492 S.E.2d 441, 444 (1997). The
amended Act also included new language stating: "Causes of action
based upon the public policies reflected in this chapter shall be
exclusively limited to those actions, procedures and remedies, if
any, afforded by applicable federal or state civil rights statutes
or local ordinances." Va. Code Ann. § 2.1-725(D) (1995). In 1997
in Doss, the Virginia Supreme Court found that in enacting the
1995 amendments to the VHRA, "the General Assembly plainly
manifested an intent to abrogate the common law with respect to
causes of action for unlawful termination of employment based upon
the public policies reflected in the Act." Doss 254 Va. at 372,
492 S.E.2d. at 447 (finding that the amended Act prohibited Bowman
claims relying on its stated public policies).

After Doss, courts consistently rejected the use of the VHRA
as a basis for Bowman claims. See, e.g., Wright v. Hilldrup Moving

22

& Storage, No. 1:16-CV-1349, 2017 WL 2262842, at *5 (E.D. Va. May 23, 2017) (Trenga, J.) (finding that there is "no recognized Virginia common law claim for wrongful termination on the basis of age, race, sex or other protected categories covered by the Virginia Human Rights Act"). These courts based such decisions in part on the language in Va. Code Ann. § 2.2-3903(A) and (D) (2014) that explicitly limited the causes of action based on the Act or its public policies to those articulated in the Act. See, e.g., Branscome v. Virginia Dep't of Env't Quality, No. 7:17-CV-359, 2017 WL 4897774, at *5 (W.D. Va. Oct. 30, 2017) (dismissing a Bowman claim because the claim was based on public policies that were also reflected in the VHRA and, therefore, precluded by Va. Code Ann. § 2.2-3903(D)).

## ii. Continued Preclusion of Bowman Claims under the VHRA

Plaintiff cites to amendments to the VHRA in 2020 as abrogating the decades of caselaw that have limited Bowman claims based on the VHRA. See ECF No. 21 at 8-9. Plaintiff claims that the reformatted § 2.2-3900 of the VHRA states "a clear policy against employment discrimination" and thus meets the second Bowman exception as articulated in Rowan. ECF No. 21 at 8-9. That second exception applies when an employer discharges an employee in violation of a public policy "explicitly expressed" in statute and the "employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public

policy." <u>Rowan</u>, 263 Va. at 214, 559 S.E.2d at 711. Specifically, Plaintiff points to the reformatted provisions of § 2.2-3900 which, after the 2020 amendments, stated: "It is <u>the policy of the Commonwealth</u> to: Safeguard all individuals within the Commonwealth from <u>unlawful discrimination</u> <u>in employment</u> because of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, <u>age</u>, marital status, sexual orientation, gender identify, <u>disability</u>, or status as a veteran." Va. Code Ann. § 2.2-3900(B)(2) (2020) (emphasis added).

However, Plaintiff overstates the changes to the stated policy. The VHRA, before the amendments stated: "It is the policy of the Commonwealth to: Safeguard all individuals within the Commonwealth from unlawful discrimination because of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, or disability . . . in employment." Va. Code Ann. § 2.2-3900(B)(1) (2001). The General Assembly did not strengthen the wording of the policy in the 2020 amendments, rather the 2020 amendments simply reformatted aspects of the Commonwealth's previous policy into discrete paragraphs and added updated categories of "sexual orientation, gender identity, [and] status as a veteran" to the anti-discrimination policy. <u>Compare</u> Va. Code Ann. § 2.2-3900(B)(2) (2020), <u>with</u> Va. Code Ann. § 2.2-3900(B)(1) (2001).

Moreover, courts have consistently rejected <u>Bowman</u> claims based on the VHRA, not for lack of a stated policy, but because the Act, itself, limited common law claims based on its policies. Any changes to the policies articulated in the Act would have little effect on the holding of the Virginia Supreme Court in <u>Doss</u>, barring common law claims for unlawful termination of employment based upon the public policies reflected in the VHRA. <u>See</u> 254 Va. at 372, 492 S.E.2d at 447. This court concludes that any 2020 policy changes do not affect this case at bar or the Motion to Dismiss. If anything, the addition of three (3) updated categories of discrimination further limit <u>Bowman</u> claims based on the VHRA.

In the 2020 amendments, the General Assembly did repeal § 2.2-3903, and importantly subsections (A) and (D). <u>See</u> Va. Code Ann. § 2.2-3903 (2020) ("Repealed by Acts 2020, c. 1140, cl. 2."). As stated above, courts have relied on the language in § 2.2-3903(A) and (D) when limiting private actions based on the Act to those actions articulated in the Act. <u>See</u> Va. Code Ann. § 2.2-3903(A) and (D) (2014). The General Assembly did not appear to add comparable language elsewhere in the Act.

Without this language, the holding of <u>Doss</u>, barring VHRA <u>Bowman</u> claims, arguably does not apply to the amended Act,[21] but

---

[21] The court notes that Plaintiff did not raise or address this argument, or any aspect of the repeal of § 2.2-3903, nor did Defendants. To the extent that the repeal of § 2.2-3903 affects the holding of <u>Doss</u>, and its progeny of caselaw, the Virginia

this will need to be a pronouncement from the Virginia Supreme Court, because despite the changes to the Act, this court finds that Plaintiff does not have a viable Bowman claim. Plaintiff cannot proceed with a Bowman claim because the VHRA provides its own remedial scheme and contemplates employees bringing a cause of action based on age and/or disability discrimination under the statute. See Va. Code Ann. § 2.2-3905(B)(1)(a). Virginia courts have regularly held that "when a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." Concerned Taxpayers of Brunswick Cty. v. Cty. of Brunswick, 249 Va. 320, 330, 455 S.E.2d 712, 717 (1995); see Carmack v. Virginia, No. 1:18-CV-31, 2019 WL 1510333, at *13 (W.D. Va. Apr. 5, 2019) (Urbanski, C.J.) (collecting cases). These collected cases involve Bowman claims under other statutory schemes rather than the VHRA because Virginia precedent for decades clearly barred VHRA based Bowman claims. This is persuasive precedent, however, as it supports that the existence of an extensive statutory scheme disqualifies the underlying policy from also supporting a Bowman claim. See Carmack, 2019 WL 1510333, at *13-14 (finding that Va. Code Ann. § 2.2-3000, Virginia's State Grievance Procedure, contained a "formal process for resolving employment-related

---

Supreme Court will have to overrule or modify this precedent, and it has not done so.

disputes" and could not give rise to a <u>Bowman</u> claim because that would "enable a plaintiff to circumvent extensive remedial schemes crafted by the Virginia General Assembly, thereby rendering them a nullity").

Plaintiff cannot work around the structure, limitations, and remedies of the VHRA by bringing a related <u>Bowman</u> claim. The VHRA prescribes an extensive remedial scheme that employees must follow when relying on the rights and policies articulated in the Act. At the time of Plaintiff's termination in 2020, to bring an employment discrimination claim under the Act, a person had to file a complaint with the Division of Human Rights of the Department of Law ("the Division") detailing the allegations.[22] <u>See</u> Va. Code Ann. § 2.2-3907(A) (2020). "Once a charge has been issued, the Division shall conduct an investigation sufficient to determine whether there is reasonable cause to believe the alleged discrimination occurred." <u>Id.</u> § 2.2-3907(D) (2020). The review will lead to a report that details the Division's findings. <u>See id.</u> Only after receiving the report does the claimant have the right to seek damages in a civil suit under the statute, unless the investigation takes more than one hundred eighty (180) days. <u>See id.</u> § 2.2-3907(E), (F), (H) (2020). "An aggrieved person who has been

---

[22] While there were some minor changes to the VHRA in 2021, they are not applicable here, except the Division of Human Rights of the Department of Law is now known as the Office of Civil Rights of the Department of Law. <u>See</u> Va. Code Ann. § 2.2-3907 (2021).

provided a notice of his right to file a civil action pursuant to § 2.2-3907 may commence a timely civil action . . . ." Id. § 2.2-3908(A) (2020).

The VHRA statutory scheme has been expanded and formalized since the holding in Doss. For example, the 2020 amendments enacted the remedial scheme discussed above. Compare Va. Code Ann. § 2.2-3907 (2020) (laying out a mandatory remedial scheme for employment discrimination complaints), with Va. Code Ann. § 2.2-3903 (2014) (containing a less substantial remedial scheme without an administrative exhaustion requirement). When a Virginia statute already contains a remedial scheme for violations of the statute, a plaintiff does not have a Bowman claim to vindicate the statute's underlying public policy. See Williams v. TMS Int'l, LLC, No. 3:21-CV-260, 2021 WL 4071868, at *5-7 (E.D. Va. Sept. 7, 2021) (Novak, J.). This reasoning applies with equal force to claims under the VHRA itself. In fact, the expansion of the VHRA's remedial scheme since Doss strengthens the application of the persuasive precedent from non-VHRA Bowman cases that found statutory remedies to be preclusive of Bowman claims. This court concludes that removing the § 2.2-3903 language does not automatically allow Bowman claims, when the VHRA articulates its own cause of action and remedy.[23]

---

[23] See supra note 21 and accompanying text.

Finally, the VHRA still precludes <u>Bowman</u> claims based on the statute's policies, even if a plaintiff cannot then prove employment discrimination under the remedial text of the statute. In other words, courts should not allow plaintiffs to use a <u>Bowman</u> claim to create "a broader remedy than the statute specifically provides." <u>Carmack</u>, 2019 WL 1510333, at *13 (quoting <u>Jenkins v. Heilig-Meyers Co.</u>, 57 Va. Cir. 448, 450 (1998)). Doing so would abandon the principle of strict construction and undermine "the legislative scheme as contemplated and created by the General Assembly." <u>Id.</u> (quoting <u>Jenkins</u>, 57 Va. Cir. at 450). Courts would also unnecessarily deplete judicial resources, if they treated a plaintiff's remedial disqualification under the VHRA as a prerequisite to making a <u>Bowman</u> claim. Such would require a court to, in essence, adjudicate a plaintiff's VHRA claim before addressing the merits of any <u>Bowman</u> claim.

Therefore, Defendants' Motion to Dismiss as to Count Four of the Amended Complaint is **GRANTED**. Accordingly, the court **DISMISSES** Plaintiff's claim for an unlawful termination against Virginia public policy under Count Four.

### III. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss, ECF No. 19, is **GRANTED in part** and **DENIED in part**. The court **GRANTS** Defendants' Motion to Dismiss as to Mazzella Lifting. Mazzella Lifting is **DISMISSED** from this case without prejudice, with

Plaintiff being **GRANTED** leave to amend regarding the relationship between Mazzella Lifting and Mazzella JHH.[24] The court **DENIES** Defendants' Motion to Dismiss as to the two disability claims, "actual" and "record of," under Count Two of the Amended Complaint. The court **GRANTS** Defendants' Motion to Dismiss as to Count Three of the Amended Complaint and **DISMISSES** Plaintiff's claim for a "regarded as" disability as to his age. To the extent Plaintiff has specific allegations that his arthritis constitutes a "regarded as" disability under Count Three, he must file them in any second amended complaint.[25] Finally, the court **GRANTS** Defendants' Motion to Dismiss as to Count Four of the Amended Complaint and **DISMISSES** Plaintiff's claim for an unlawful termination against Virginia public policy. The Clerk is **DIRECTED** to forward a copy of this Memorandum Order to counsel for the parties.

        **IT IS SO ORDERED.**

                                        /s/
                                Rebecca Beach Smith
                                Senior United States District Judge

                        _____
                            REBECCA BEACH SMITH
                    SENIOR UNITED STATES DISTRICT JUDGE

March 4, 2022

---

[24] Any second amended complaint must reallege all other counts, as it would then be the operative pleading.

[25] See supra note 24.